UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-20218-CR-MOORE/Torres(s)

UNITED STATES OF AMERICA

v.

VITAL FREDERICK
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits the foregoing sentencing memorandum.

The defendant's total sentencing exposure will be the sum of the advisory guideline range for his convictions on Counts 1-5, plus the consecutive two-year sentences for aggravated identity theft on Counts 6 and 7. With respect to Counts 1-5, the Probation Office has recommended a total offense level of 21. In its objection to the PSI (DE 95), the government explained the grounds for imposing a two-level upward adjustment under U.S.S.G. §3C1.1 for obstruction of justice, based upon the defendant's perjured trial testimony. With that adjustment, the defendant's total offense level for Counts 1-5 should be a level 23, yielding a sentencing range of 46 to 57 months.

Under 18 U.S.C. §1028A(b)(2) & (4), the Court is to run the two-year sentences for Counts 6 and 7 consecutive to the sentence for Counts 1-5 and may, in its exercise of discretion run the sentences for Counts 6 and 7 consecutive to one another. (The Court also may run Counts 6 and 7 consecutive in part and concurrent in part to one another.) Accordingly, coupled with the advisory sentencing range for Counts 1-5, the defendant's total sentencing range should be a minimum of 70-81 months, if the Court does not run Counts 6 and 7 consecutive to one

1

another, or as high as 94-105 months, if the Court runs Counts 6 and 7 consecutive to one another. For the reasons set forth below, the government respectfully requests that the Court sentence the defendant for Counts 1-5 at the high end of the advisory sentencing range – that is, 57 months – and run Counts 6 and 7 consecutive to one another, for a total sentence of 105 months imprisonment.

## ARGUMENT

Of the factors listed under 18 U.S.C. §3553(a), the government submits that the most important in this case are the nature and circumstances of the offense and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct.

The defendant's crimes were unquestionably significant. As a sworn police officer, this defendant had pledged to protect the public. Instead, he abused his badge and official position to victimize the public. Through his criminal conduct, the defendant also has undermined public confidence in law enforcement and the ability of law enforcement officers to do their jobs and promote public safety and security.

The defendant's convictions result from his commission of two separate courses of criminal conduct. As proven at trial and set forth in the PSI, in the first scheme the defendant provided security to a person who he understood was cashing fraudulently obtained U.S. Treasury checks. In the second scheme, the defendant pulled vehicle tags from unknowing motorists, ran the tag information through protected law enforcement databases, and then sold the tag holders' names and identifying information. The defendant did so with the understanding that a second City of Miami police officer (who at the time actually was cooperating with law

enforcement) was going to use the pilfered identification information to file fraudulent tax returns and collect the refunds.

While both schemes were egregious, the identity theft scheme was particularly so. Miami is one of the epicenters in the United States for identity theft, and stemming identity theft necessarily is a top priority of local law enforcement. By using his position as a police officer not to prevent these crimes, but instead to commit them for his own personal benefit, the defendant turned that goal on its head.

The defendant stole identifying information from people who had no means to protect themselves. This was not a case in which the intended victims were snared in part as a result of their own unwise conduct, such as responding to e-mails they should have deleted. Rather, the defendant's intended victims fell into his criminal cross-hairs merely because they owned a car and happened to drive through an area of Miami where the defendant was supposed to be protecting them, rather than preying upon them. All told, the defendant stole identifying information from 52 potential victims. Although the government charged the defendant with only two counts of aggravated identity theft, it could have charged many more.

The offenses in this case did not mark the first time the defendant betrayed his badge. But for being caught, nor would it have been the last time.

The evidence in this case showed that while engaging in the schemes proposed by Nathaniel Dauphin and Malinsky Bazile, the defendant participated in one or more separate schemes involving fraudulent Treasury checks. During his recorded meetings with Dauphin, the defendant sought Dauphin's hand to assist the defendant's cousin in cashing fraudulent checks. The defendant also tried to enlist Dauphin's help so that the defendant himself could cash fraudulent checks, including fraudulently obtained U.S. Treasury checks, which the defendant

3

referred to in code as "chicken with a New York pizza." For the Court's reference, relevant excerpts from the transcripts of the undercover recordings were appended as Attachments 6-9 to the government's objection to the PSI (DE 95).

At the same time, the defendant also was involved in marijuana harvesting and distribution. During one of the defendant's early undercover meetings with Dauphin, the defendant recited various details of his brother's marijuana operation in California. For the Court's reference, the excerpt of the relevant undercover recording was appended as Attachment 1 to the government's objection to the PSI. Based upon the smooth and natural flow of the conversation, it is difficult to believe that the defendant was merely puffing. Regardless, the defendant's willingness to boast about a marijuana grow house operation during the time that he was a sworn police officer speaks volumes about his lack of fidelity to his professional obligations and his rather considerable criminal intent and criminal aspirations.

The defendant further exhibited his disrespect for the law through his conduct at trial – in particular, by perjuring himself repeatedly and brazenly. As the Court recalls, the defendant claimed that he committed the crimes only because Dauphin and Bazile threatened to expose his sexual orientation and claimed that his discussion of the marijuana operation was a fabrication, prompted by a panicked fear that his mention of his planned trip to California might expose his supposed "secret." In its objection to the PSI, the government outlined the bases on which the Court should find that the core of the defendant's testimony was wholly perjured. The government incorporates the arguments from that submission into this memorandum.

## **CONCLUSION**

During the September 2012 sentencing of former Hialeah Gardens police officer Lawrence Perez, the Court explained:

4

> I can at least in terms of the history and characteristics of the defendant and the need to provide adequate deterrence and respect for law, I can think of nothing that undermines our judicial system[1] than corruption at any level, whether it be a law enforcement officer, a prosecutor, a judge, a lawyer, and that's what we have here. We have a corrupt cop.
>
> And, you know, what his good works, his other good works, may have been and whatever good things he may have done in his life, we're here to sentence him for his bad behavior, not because of who he is, but because of what he did. And it's that bad behavior that needs to recognized and form the basis of any sentence he receives.

*United States v. Lawrence Perez*, Case No 10-20672-Cr-Moore, DE 368:52-53 (Sept. 5, 2012).

The government respectfully submits that these same considerations apply in this case and call for the sentence requested by the government.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:  *s/ Michael S. Davis*
Michael S. Davis
Assistant United States Attorney
Florida Bar No. 972274
99 NE 4th Street
Miami, Florida 33132
Phone: (305) 961-9027
Fax: (305) 536-4675
e-mail: michael.davis2@usdoj.gov

---

[1] It appears that the transcript may be missing a word between "system" and "than."

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using CM/ECF on December 6, 2013.

*s/ Michael S. Davis*
Michael S. Davis
Assistant United States Attorney